**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 3 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

MARCEL A. HARDWELL,

   Defendant-Appellant.

No. 96-3394
(D.C. No. 93-CR-10071)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **BARRETT**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In this appeal, defendant-appellant Marcel A. Hardwell appeals from his resentencing following remand in an earlier decision of this court. See United States v. Hardwell, 80 F.3d 1471 (10th Cir. 1996). On appeal, Marcel asserts that, upon resentencing, the district court erred in including uncharged drug quantities as relevant conduct in its calculation of his recommended sentencing range. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## I. BACKGROUND

The underlying facts of this case are set forth fully in Hardwell, 80 F.3d 1471, and, except as necessary for an understanding of our decision, we need not reiterate them here. In August 1993, Dennis Hardwell, Marcel's cousin, was the target of a reverse sting operation in which an undercover agent, posing as a drug courier from California, attempted to set up the sale of two kilos of cocaine to Dennis for $15,000 a kilo. The sale was arranged to take place in a certain hotel room in Wichita, Kansas, in which DEA agents had set up video surveillance. Marcel and codefendant Frederick Bowens met the undercover agent in the hotel room, apparently to negotiate the sale. After several hours, the undercover agent determined that the defendants were not going to be able to produce all of the $30,000 needed for the

buy. She then decided to end the operation and gave an arrest signal to waiting agents who subsequently arrested Dennis, Marcel, and five others.

Marcel, Dennis, and four other codefendants were convicted by a jury of conspiracy to possess two kilograms of cocaine with intent to distribute. Marcel and Dennis were also convicted of money laundering. Marcel was sentenced to 108 months' imprisonment. The sentencing court, reasoning that defendants could not be sentenced for conduct for which they were neither charged nor convicted, declined to include certain other quantities of cocaine to which the defendants had been allegedly linked as relevant conduct for purposes of enhancing the sentences.

Marcel, Dennis, and two codefendants appealed their convictions for conspiracy to possess two kilograms of cocaine with intent to distribute. In addition, Dennis and Marcel appealed their convictions for money laundering.[1] The government cross appealed, contending that the district court erred in excluding uncharged drug quantities from the base offense level. This court affirmed Marcel's conviction on the conspiracy to distribute charge, but remanded on the government's cross-appeal for further fact finding on the issue of whether the uncharged drug quantities should be considered relevant conduct for the purpose of calculating his base offense level.

_____

[1] This court reversed the money laundering convictions of both defendants. See Hardwell, 80 F.3d at 1484 (Marcel); United States v. Hardwell, 88 F.3d 897, 898 (10th Cir. 1996) (Dennis).

Following a resentencing hearing on remand, the district court determined that under the sentencing guidelines the four and one-half kilos of cocaine seized in two uncharged incidents should be considered relevant conduct for purposes of determining Marcel's relative base offense level. Marcel appeals this decision.

## II. DISCUSSION

"We review for clear error district court factual findings regarding drug quantities and whether certain conduct is relevant conduct under the guidelines." United States v. Richards, 27 F.3d 465, 468 (10th Cir. 1994). The government has the burden of proving the quantity of drugs for sentencing by a preponderance of the evidence. See id. "The information upon which the district court relies must contain sufficient indicia of reliability." United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993) (further quotation omitted).

When determining a sentencing range, the sentencing guidelines require that a sentencing court include as relevant conduct all acts that were part of the same course of conduct or common scheme or plan as the offense of conviction, "regardless of whether the defendant was convicted of the underlying offenses pertaining to the additional amounts." United States v. Roederer, 11 F.3d 973, 978-79 (10th Cir. 1993) (further quotation omitted). In determining whether certain offenses are relevant conduct, "'the sentencing court is to consider such factors as

the nature of the defendant's acts, his role, and the number and frequency of repetitions of those acts, in determining whether they indicate a behavior pattern.'" Id. at 979 (quoting United States v. Santiago, 906 F.2d 867, 872 (2d Cir. 1990)). "Similarity, regularity, and temporal proximity are the significant elements to be evaluated." Id.

Whether acts are relevant conduct for a participant in a conspiracy is determined by reference to "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. §§ 1B1.3(a)(1)(A), 1B1.3(a)(1)(B). When making a relevant conduct determination in relation to a conspiracy,

> [a] defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct (e.g., in the case of a defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week, the cocaine sold prior to the defendant joining the conspiracy is not included as relevant conduct in determining the defendant's offense level).

Id. § 1B1.3, Application Note 2.

In determining whether a quantity of drugs should be attributed to a member of a conspiracy, the sentencing court must determine the defendant's own relevant conduct. See United States v. Torres, 53 F.3d 1129, 1143 (10th Cir. 1995). Relevant conduct for purposes of sentencing is not necessarily the same for every participant

in a conspiracy.  See id. at 1143-44; U.S.S.G. § 1B1.3, Application Note 2.  Thus, the proper inquiry of the sentencing court focuses on three questions:  (1) when the defendant became a participant in the conspiracy; (2) whether the conduct being considered as relevant conduct for sentencing purposes was conduct in furtherance of the jointly undertaken criminal activity; and (3) whether that conduct was reasonably foreseeable by the defendant.  See United States v. Barragan, 915 F.2d 1174, 1179 (8th Cir. 1990); see, e.g., United States v. Roberts, 14 F.3d 502, 522 (10th Cir. 1993) (stating that for sentencing purposes, each conspirator is to be attributed the quantity of drugs reasonably foreseeable or within the scope of the conspiratorial agreement); United States v. Carreon, 11 F.3d 1225, 1231 n.17 (5th Cir. 1994) (setting forth findings required on remand to determine drug quantity attributable to a conspirator).

The four and one-half kilos of cocaine determined to be relevant conduct for the purpose of calculating Marcel's base offense level were seized during two previous incidents.  The first incident involved a traffic stop between Houston and Dallas, Texas, in January 1993, wherein the Texas police seized two and one-half kilos of cocaine from a van Dennis was driving.  Passengers in the van included Dennis' half brother, Kenny Ray Wright, his brother-in-law, Brian Stallings, and a man identified as Sean McDaniel.  The government contends that Dennis was traveling from Marcel's mother's home in Houston at the time of the arrest.

During the second incident in April 1993, DEA agents intercepted a drug courier from Arizona carrying two kilograms of cocaine who claimed he was delivering the cocaine to a person identified as James Kevin Hail. When Mr. Hail was arrested in Wichita attempting to take possession of the vehicle containing the cocaine, he agreed to cooperate with the DEA in a controlled delivery of the cocaine to Dennis, who Mr. Hail claimed he had sold cocaine to in the past. The delivery failed when, while recording a call from Mr. Hail to Dennis' home, the line was inadvertently left open after completion of the call, enabling a person or persons at Dennis' home to hear the DEA play back the recording. Pursuant to his own admission, upon discovery that the telephone call was being recorded, Marcel went to Mr. Hail's hotel room and confronted him as to why he was attempting to set up Dennis. At trial, Marcel testified that he went to Mr. Hail's hotel room because he was curious as to what was going on. See R. Vol. XI at 1290. We consider it worthy of mention that, although Mr. Hail testified before the grand jury in this case, he did not testify at Marcel's trial or at either sentencing hearing.

The government argued at resentencing, that statements made by Marcel to the undercover agent during the reverse sting operation prove Marcel's involvement in the prior incidents. According to the testimony of the undercover agent at trial, during several hours of posturing and negotiations with the undercover agent, Marcel bragged that "they were all crew . . . doing a least a kilo a day," id. Vol. V at 181,

and although "they had already lost four kilos of cocaine and $100,000," they were still able to stay in business, id. at 246, 249. Marcel argued that this was "puffing," or bragging in order to impress the undercover agent.

The district court found that Dennis' involvement in the incident in Texas in January 1993, and in the failed controlled delivery in April 1993, could not be "sheer coincidence." Id. Vol. II at 36. The court then concluded that in light of what it had read and heard, "there was, in fact, an organization that was at work and they were involved in trafficking, and that qualifies as relevant conduct." Id. at 36-37. The court then found these same findings to be equally applicable to Marcel and incorporated them into Marcel's sentencing. See id. at 54.

In remanding, this court stated that "Marcel's own statements could meet [the relevant conduct] requirement, and could support a finding that he was involved in the two earlier incidents." Hardwell, 80 F.3d at 1499. We further opined that Marcel's statements regarding the loss of four kilos of cocaine, his offer to give up a Houston source after his arrest, and his admission that he overheard the recorded telephone conversation prompting his confrontation of James Hail following the failed controlled delivery attempt to Dennis "suggest[]" and "tend to show" his involvement in the April 1993 incident. Id. at 1499-1500. We then concluded that, because the district court made no findings regarding Marcel's involvement in the two incidents, a remand for further fact finding was appropriate.

- 8 -

At the resentencing hearing, the district court heard testimony from William Crawford, a narcotics detective with the Sedgwick County, Kansas Sheriff's Department, and arguments from the government and counsel for both Dennis Hardwell and Marcel. As to Dennis, the court stated:

> I think that in this case the Tenth Circuit gave us a terrific amount of direction in terms of what the Court should be looking for at resentencing, and the Tenth Circuit indicated that the arrest in the van in Texas could be relevant conduct. The Tenth Circuit determined that the interception by the DEA of the drugs coming into Kansas could be relevant conduct. I believe that the evidence here bears that out, and as I stated earlier, I am making a finding that those two incidents are, in fact, relevant conduct, and for purposes of sentencing, that six and a half kilograms of cocaine is the appropriate amount to be used in determining sentence.

R. Vol. II at 50.

In addressing counsel's objections prior to actually resentencing Marcel, the court stated:

> Mr. Whitehead, I frankly tend to agree with you that the evidence is a little thinner with respect to the January of '93 stop of the van down in Texas as it relates to Marcel Hardwell, and I agree with you that it's a little thinner with respect to the April of '93 interception by the DEA of the drugs coming into Kansas, but notwithstanding the characterization that you have made that Mr. Hardwell's simply attempting to impress the seller on the videotape that we saw, it's very difficult for me to ignore the words that came out of his own mouth, for whatever reason, in terms of the amount of business that their group had been doing and over what period of time. Obviously in terms of relevant conduct, when one is dealing with a group of people and family or not, there's no question but what there were members of the family present when illegal activity was taking place. I can't overlook that, and I think that there is sufficient evidence for me to conclude and, in fact, I think it's more probable than not that Marcel Hardwell was

involved as part of an organization, and it was foreseeable those events that took place in Texas in January of '93 and when the delivery was intercepted in April of 1993, and I think we made enough of a record in terms of findings that I am going to deny objection number one.

Id. at 71-72.

When resentencing Marcel, the court stated:

The findings I made with respect to the 6.5 kilograms of cocaine being appropriate to use for purposes of sentencing in Dennis Hardwell's case are equally applicable and incorporated into the Court's comments in the sentencing of Mr. Marcel Hardwell, and because Mr. Marcel Hardwell has been present with counsel throughout the sentencing proceedings this morning, the matters that we took up jointly, as well as Mr. Dennis Hardwell's sentencing, I don't feel compelled to run through those same findings again, but simply incorporate them at this time in my sentencing.

Id. at 54.

In United States v. Melton, No. 97-6028, 1997 WL 768381 (10th Cir. Dec. 15, 1997), the district court deemed $30 million worth of counterfeit Federal Reserve notes produced in a reverse sting operation relevant conduct for sentencing purposes even though the notes were printed after the defendant was arrested, and the defendant took no part in the sting operation. In reversing for resentencing, this court held:

The district court failed to make such "particularized findings" and misapplied the sentencing guidelines by improperly assuming that the scope of the criminal activity [the defendant] agreed to jointly undertake was the same as the scope of the entire conspiracy, including the reverse sting. We need not remand for further proceedings on the scope of [the defendant's] particular agreement, however, because the facts underlying the determination are undisputed and do not carry the

- 10 -

government's burden of establishing [the defendant's] accountability for the activity that took place after he was arrested.

Id. at *4.

In this case, it is clear that the court failed to make individualized findings as to Marcel. See United States v. Milledge, 109 F.3d 312, 316 (6th Cir. 1997) (holding that under the sentencing guidelines, "differentiation between coconspirators" and "particularized sentencing" are required) (further quotation omitted); United States v. Meacham, 27 F.3d 214, 217 (6th Cir. 1994) (holding the district court erred in holding all coconspirators accountable for all the drugs channeled through the conspiracy without making individualized findings regarding each coconspirator's participation). It would at first appear that the government failed to meet its burden of proving by a preponderance of the evidence Marcel's accountability for the uncharged drug amounts previously seized, and, therefore, pursuant to our holding in Melton, 1997 WL 768381 at *4, this judgment could be reversed and the case remanded for resentencing. We believe, however, that the district court's reasoning in resentencing Marcel may have been predicated on its perception that our comments in Hardwell, 80 F.3d at 1499-1500, constituted more definitive direction on remand than was intended.

Our discussion in Hardwell of what may be considered relevant conduct was not intended to usurp the district court's fact finding purview. See United States v. Guzman, 864 F.2d 1512, 1521 (10th Cir. 1988) ("It is 'not the function of the

appellate court to try the facts or substitute for the trial court in the determination of factual issues.'") (quoting Sabol v. Snyder, 524 F.2d 1009, 1011 (10th Cir. 1975)). Therefore, we determine, Melton notwithstanding, that the appropriate course of action is to remand to the district court for further findings of fact. In so doing, we direct the sentencing court to make specific and individualized findings based upon a careful inquiry into the nature of the incidents in question, and the extent of Marcel's involvement. See 1997 WL 768381 at *3 (sentencing court must first determine "'the scope of the specific conduct and objectives embraced by the defendant's agreement'") (quoting U.S.S.G. § 1B1.3, Application Note 2); see also Roberts, 14 F.3d at 522 ("'The drug amount attributable to a defendant for purposes of sentencing is not established merely by looking to the amount of drugs involved in the conspiracy as a whole,'" but to "'*the quantity of drugs which he reasonably foresaw or which fell within "the scope" of his particular agreement* with the conspirators.'") (quoting United States v. Castaneda, 9 F.3d 761, 770 (9th Cir. 1993)) (further quotation omitted); Torres, 53 F.3d at 1144 ("The touchstone under § 1B1.3 is whether the quantities were reasonably foreseeable to the coconspirators in light of the nature, extent, and purpose of the conspiracy"). The court also should be cognizant of the need for distinction between what Marcel may have known of the activities of his coconspirators, and what he actually participated in or could have reasonably foreseen as criminal conduct in furtherance of the conspiracy of which

he was a participant.  See U.S.S.G. § 1B1.3, Application Note 2 (relevant conduct does not include offenses undertaken before defendant joined the conspiracy, "even if the defendant knows of that conduct").

In remanding this case, we make no judgment as to the correctness of Marcel's sentence, recognizing that after further inquiry and fact finding, his sentence may very well stand.  We only determine that without specific findings of fact as to Marcel's role in the incidents deemed relevant conduct, we are unable to adequately review the sentencing court's determination.  Therefore, the judgment of the United States District Court for the District of Kansas is REVERSED, and the case is REMANDED for further fact finding, and if appropriate, resentencing.

Entered for the Court

Michael R. Murphy
Circuit Judge