**Ruben Patrick VALDEZ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Nos. EP–05–CV–329–PRM, EP–02–CR–1326–PRM–1.**

United States District Court, W.D. Texas, El Paso Division.

March 5, 2007.

Ruben Patrick Valdes, Three Rivers, TX, pro se.

Ruben Morales, Luis Gutierrez, Joe A. Spencer, Attorney at Law, Christopher Allen Antcliff, Stanton & Antcliff, P.C., El Paso, TX, for Petitioner.

Thomas Clair Roepke, U. S. Attorneys, El Paso, TX, for Respondent.

## *MEMORANDUM OPINION & ORDER*

MARTINEZ, District Judge.

Before the Court is Petitioner Ruben Patrick Valdez's ("Valdez") *pro se* "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," filed on October 6, 2005, in the above-captioned causes. Respondent United States of America filed a "Response to Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to Section 2255" on December 12, 2005. For the reasons discussed below, the Court concludes that Valdez has not shown that he is entitled to relief under the applicable legal standards. The Court will accordingly deny Valdez relief and dismiss his Motion to Vacate with prejudice. The Court will additionally deny Valdez a Certificate of Appealability.

## I. BACKGROUND & PROCEDURAL HISTORY

### A. *Criminal Cause No. EP–02–CR–1326–PRM–1*

On February 5, 2003, the Grand Jury sitting in El Paso, Texas, returned a two-count Indictment against Valdez, Roman Martin Valdez, and Herman Curtis Aldrich. The Indictment charged them with conspiracy to transport and harbor aliens for financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(B)(iii), and 1324(a)(1)(B)(iv) (Count One), and knowing transportation of aliens for financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(B)(iii), and 1324(a)(1)(B)(iv) (Count Two). A jury found Valdez guilty of both counts on April 17, 2003. The jury further found beyond a reasonable doubt in a special verdict form that (1) the conspiracy charged in Count One had placed in jeopardy the life of one or more persons, (2) the conspiracy charged in Count One resulted in the death of one or more persons, (3) the offense charged in Count Two had placed in jeopardy the life of one or more persons, and (4) the offense charged in Count Two resulted in the death of one or more persons.

At Valdez's sentencing hearing, the Court took into consideration the Sentencing Guidelines and a Presentence Investigation Report ("PSR"). The PSR recommended that the two counts be grouped and given a base offense level of twelve, pursuant to U.S.S.G. §§ 2L1.1(a)(3) and 3D1.2. The PSR further recommended four sentencing adjustments: (1) a nine-level upward adjustment based on the offense involving the transportation of 100 or more unlawful aliens, pursuant to U.S.S.G. § 2L1.1(b)(2)(C); (2) a two-level upward adjustment on the grounds that "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person," pursuant to U.S.S.G. § 2L1.1(b)(5); (3) an eight-level upward adjustment on the grounds that the offense resulted in the death of at least one undocumented alien, pursuant to U.S.S.G. § 2L1.1(b)(6)(4); and (4) a four-level upward adjustment for Valdez's aggravating role as an organizer or leader of the activity, pursuant to U.S.S.G. § 3B1.1(a). The proposed adjustments led to a total offense level of 35, and, together with Valdez's criminal history category of V, resulted in a guidelines imprisonment range of 262 to 327 months.

At his sentencing hearing, Valdez's counsel raised objections to each of the four proposed adjustments. The Court overruled each objection and applied the adjustments. The Court entered its final judgment on June 20, 2003, sentencing Valdez to a 327–month term of imprisonment and a five-year term of supervised release on each count, to run concurrently. The Court additionally ordered Valdez to pay a $25,000.00 fine and a $200.00 special assessment.

Valdez subsequently filed a direct appeal to the Court of Appeals for the Fifth Circuit. His appellate counsel challenged only the eight-level increase for conduct resulting in the death of another, arguing that there was no evidence linking Valdez to the July 27, 2002 load in which two aliens died, and that the Government had established neither causation nor foreseeability. The Fifth Circuit disagreed, finding that Valdez's involvement in the conspiracy and evidence directly linking Valdez to the load in question gave the District Court sufficient grounds upon which to apply the increase. Accordingly, the Fifth Circuit affirmed Valdez's sentence on June 2, 2004.

**B.** *Valdez's Motion to Vacate Pursuant to 28 U.S.C. § 2255*

The Court has read Valdez's Motion to Vacate liberally, pursuant to *Haines v. Kerner.*[1] After review, the Court understands Valdez to raise two claims for relief. First, Valdez contends that his appellate counsel rendered ineffective assistance by failing to appeal the application of two sentencing adjustments which together resulted in a fifteen-level enhancement to Valdez's base offense level ("Ground One"). Second, Valdez argues that his appellate counsel rendered ineffective assistance by failing to petition the Supreme Court for a writ of certiorari to challenge Valdez's sentencing under *Blakely v. Washington* ("Ground Two").[2] Valdez contends that as a result of this ineffective assistance, his sentence is unconstitutional. Before reaching the merits of Valdez's Motion to Vacate, the Court will first consider the scope and purpose of motions to vacate pursuant to 28 U.S.C. § 2255.

## II. MOTIONS TO VACATE PURSUANT TO 28 U.S.C. § 2255

■ After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that [he] stands fairly and finally convicted."[3] Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[4] A criminal defendant seeking relief from his conviction or sentence in a motion to vacate pursuant to 28 U.S.C. § 2255 must therefore establish one of the following: (1) his sentence was imposed in violation of the Constitution or federal law; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[5]

---

**1.** 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**2.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**3.** *United States v. Willis,* 273 F.3d 592, 595 (5th Cir.2001).

**4.** *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992).

**5.** *United States v. Seyfert,* 67 F.3d 544, 546 (5th Cir.1995).

 It is well settled that, absent countervailing equitable considerations, a district court will refuse to adjudicate claims that were previously raised and rejected on direct review.[6] It is similarly well settled that a collateral challenge may not take the place of a direct appeal.[7] If a petitioner challenging his conviction and sentence pursuant to 28 U.S.C. § 2255 could have raised his constitutional or jurisdictional issues on direct appeal, he may not raise them for the first time on collateral review unless he either shows cause for his procedural default and actual prejudice resulting from the error, or demonstrates that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent.[8]

To satisfy the "cause" standard, a petitioner must "show that some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances."[9] The procedural bar does not apply, however, to claims which could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.[10] To establish "actual innocence" sufficient to overcome the procedural bar to review of his claims, a petitioner must present new evidence which, when considered with all the evidence presented at trial, makes it more likely than not that no reasonable juror would have convicted the petitioner.[11]

## III. VALDEZ WAS NOT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL

### A. Legal Standard

An ineffective assistance of counsel claim has two components.[12] First, the petitioner must show that counsel performed deficiently.[13] "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'"[14] The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that 'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[15]

To establish that counsel's representation fell below an objective standard of reasonableness, a petitioner must overcome a strong presumption that his attorney's conduct fell within a wide range of

---

6. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir.1979).

7. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) ("[A] collateral challenge may not do service for an appeal").

8. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir.1991).

9. *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir.1996) (internal quotation omitted).

10. *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir.1992) (stating that the general rule in the Fifth Circuit is that, except in rare instances where the record on direct appeal is adequate to evaluate such a challenge, an ineffective assistance of counsel claim cannot be resolved on direct appeal because no opportunity existed for the parties to develop the record on the merits of the allegations).

11. *Schlup v. Delo*, 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

12. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

13. *Wiggins*, 539 U.S. at 521, 123 S.Ct. 2527.

14. *Id.* (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052).

15. *Id.* (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052).

reasonable professional assistance.[16] Reviewing courts are extremely deferential in scrutinizing counsel's performance, making every effort to eliminate the distorting effects of hindsight.[17] It is strongly presumed that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions.[18] An attorney's strategic choices, usually based on information supplied by the defendant and a thorough investigation of relevant facts and law, are virtually unchallengeable.[19] Counsel is not required to advance every non-frivolous argument, nor to investigate every conceivable matter, nor to assert patently frivolous arguments.[20] Defense counsel is similarly not required to exercise clairvoyance during the course of a criminal trial.[21]

Furthermore, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."[22] Accordingly, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."[23]

Because a convicted defendant must satisfy both *Strickland* prongs, his failure to establish either deficient performance or

---

**16.** *Strickland,* 466 U.S. at 687–91, 104 S.Ct. 2052.

**17.** *See, e.g., Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (explaining the compelling policy considerations behind *Strickland's* contemporary, rather than retrospective, assessment of counsel's conduct); *Burger v. Kemp,* 483 U.S. 776, 789, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (stating that a fair assessment of attorney performance requires the court to make every effort to eliminate the distorting effect of hindsight and to evaluate counsel's decisions based on the then-existing circumstances and counsel's perspective at the time); *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir.1997) (stating that the court will not find inadequate representation merely because, with the benefit of hindsight, it disagrees with counsel's strategic choices).

**18.** *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Drew v. Collins,* 964 F.2d 411, 422 (5th Cir.1992); *Duff–Smith v. Collins,* 973 F.2d 1175, 1182 (5th Cir.1992).

**19.** *See Boyle v. Johnson,* 93 F.3d 180, 187–88 (5th Cir.1996) (holding that an attorney's decision not to pursue a mental health defense or to present mitigating evidence concerning the defendant's possible mental illness was reasonable where counsel feared that the jury would not view such testimony as mitigating and that the prosecution might respond to the testimony by presenting its own psychiatric testimony regarding the defendant's violent tendencies); *West v. Johnson,* 92 F.3d 1385, 1406–09 (5th Cir.1996) (holding that a trial counsel's failure to conduct further investigation into the defendant's head injury and psychological problems was reasonable where interviews with the defendant and the defendant's family failed to produce any helpful information); *cf. Wiggins,* 539 U.S. at 524, 123 S.Ct. 2527 (holding that, in a capital case, counsel's decision not to expand its mitigation-defense investigation beyond reviewing a presentence investigation report and Department of Social Services records, despite suggestions that additional, significant mitigating evidence existed, was unreasonable and fell below professional standards).

**20.** *See Sones v. Hargett,* 61 F.3d 410, 415 n. 5 (5th Cir.1995) (stating that counsel cannot be held deficient for failing to press a frivolous point); *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir.1995) (explaining that the Sixth Amendment does not require counsel to file meritless motions); *Smith v. Collins,* 977 F.2d 951, 960 (5th Cir.1992) ("The defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources.").

**21.** *Sharp v. Johnson,* 107 F.3d 282, 290 n. 28 (5th Cir.1997).

**22.** *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

**23.** *Id.* at 692, 104 S.Ct. 2052.

prejudice makes it unnecessary for a court to examine whether the petitioner has satisfied the other prong.[24] Therefore, a convicted defendant's failure to establish that his counsel's performance fell below an objective standard of reasonableness avoids the need to consider the issue of prejudice.[25] Similarly, it is also unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice.[26] Moreover, mere conclusory allegations in support of ineffective assistance claims are insufficient, as a matter of law, to raise a constitutional issue.[27]

When a petitioner raises a claim of ineffective assistance on appeal, the Court applies the familiar framework of *Strickland*, requiring the petitioner to show constitutionally deficient performance and prejudice.[28] While a criminal defendant has a constitutional right to effective assistance on direct appeal,[29] it does not constitute

deficient performance for counsel not to raise every non-frivolous issue on appeal.[30] "The decision to focus on the stronger arguments on appeal belongs to counsel, and reasonable professional judgments should not be second-guessed." [31] If a petitioner can show deficient performance, he must also satisfy the prejudice prong of *Strickland* by demonstrating that there is a reasonable probability that, but for the deficient failure to raise a non-frivolous issue, he would have prevailed on appeal.[32]

With the principles articulated above in mind, the Court now turns to the merits of Valdez's claims of ineffective assistance.

### B. Discussion

#### 1. Ground One

In Ground One of his Motion to Vacate, Valdez contends that his appellate counsel rendered ineffective assistance by failing

---

24. *Id.* at 700, 104 S.Ct. 2052; *Green*, 116 F.3d at 1121; *see also Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir.1993) (stating that the defendant bears the burden of proof on both prongs of the *Strickland* test).

25. *United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir.1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229–30 (5th Cir.1987).

26. *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 (explaining that it is not necessary for a court evaluating the merits of an ineffective assistance claim to analyze the components of the applicable test in any particular order or to evaluate both components if the petitioner fails to carry his burden as to one aspect of the test); *Black v. Collins*, 962 F.2d 394, 401 (5th Cir.1992) (stating that a court evaluating a claim of ineffective assistance need not address every component of the applicable test in order, and when a defendant fails to carry his burden as to one component of the test, the court need not address the other component); *Pierce*, 959 F.2d at 1302 (asserting that "[a]n insufficient showing of prejudice pretermits addressing the adequacy prong" of the *Strickland* test for ineffective assistance).

27. *See Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir.1994) (per curiam) (holding that a petitioner's speculative complaints of ineffective assistance by appellate counsel did not warrant federal habeas relief).

28. *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir.2004).

29. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir.2000).

30. *Reinhart*, 357 F.3d at 525.

31. *United States v. O'Keefe*, 2005 WL 1578625, at * 13 (E.D.La. June 29, 2005). *See also Phillips*, 210 F.3d at 348 (5th Cir. 2000) (stating that appellate counsel's failure to raise an issue is deficient performance only when the failure "fall[s] below an objective standard of reasonableness").

32. *Id. See also United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir.2001) (stating that prejudice requires petitioner to show "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue").

to appeal the application of two sentencing enhancements. Given that Valdez fails to indicate which particular enhancements he believes should have been raised on appeal, the Court will treat his argument as challenging all three of the enhancements not raised by his counsel.[33] To determine whether Valdez's appellate counsel rendered deficient performance, the Court must decide whether his challenges to the three unraised adjustments have such merit that it was objectively unreasonable for counsel not to contest their application.

In faulting his appellate counsel for failing to appeal the increases, Valdez offers no argument as to why the increases were improperly applied, instead focusing his Memorandum on Ground Two of his Motion to Vacate. Valdez argues only that his counsel should have appealed the adjustments, as they resulted in a 15–level increase to his base offense level. Valdez has offered no evidence or argument to suggest that raising these issues on appeal would have been anything but frivolous, let alone that it would actually have led to any change in his sentence. Therefore, the Court will consider the sufficiency of the evidence upon which the Court could apply each of the adjustments, the same grounds upon which Valdez's appellate counsel argued that the eight-level increase was improperly applied.

First, the Court notes that Valdez's counsel did appeal one of the four adjustments that the Court originally applied to Valdez's sentence. This militates against, though does not preclude, a finding of deficient performance.[34] Since Valdez's counsel did raise one issue, Valdez must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." [35] Therefore, the Court must consider whether any of the three issues not raised on appeal were relatively stronger on the merits than the adjustment that Valdez's counsel actually did argue.

Since Valdez's trial counsel objected to each of the four adjustments at his sentencing hearing, the Fifth Circuit would have reviewed this Court's interpretation of the Sentencing Guidelines *de novo* but the Court's factual findings only for clear error.[36] Having engaged in its own review of the record, the Court finds nothing that

---

**33.** Valdez's Motion to Vacate contends that it was ineffective assistance not to raise "two (2) sentencing enhancement issues which resulted in his receiving a Base Offense Level 15 levels higher than the one which should have been determined by the jury's findings." Mot. to Vacate 4. Valdez's Memorandum of Law focuses almost entirely on Ground Two, and sheds no light on which two enhancements should have been raised on appeal. Taken together, the three enhancements applied to Valdez's sentence that were not raised on appeal—increases of nine, two, and four levels—produce a fifteen-level increase. The Court will therefore consider all three of the enhancements not raised on appeal.

**34.** *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

**35.** *Id.* In *Smith*, the Supreme Court stated that,

In *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), we held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ('Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.').
*Id.*

**36.** *Reinhart*, 357 F.3d at 525; *United States v. Carreon*, 11 F.3d 1225, 1231 (5th Cir.1994).

calls into question the Court's original application of the three adjustments.

### a. Nine-level adjustment under § 2L1.1(b)(2)

■ Under § 2L1.1(b)(2), the offense level of a defendant is increased by three to nine levels when the "offense involved the smuggling, transporting, or harboring of six or more unlawful aliens." [37] If the offense involved 100 or more unlawful aliens, the offense level is increased by nine levels.[38] At his sentencing hearing, Valdez's trial counsel contended that the evidence did not sufficiently establish that Valdez's own conduct connected him to the transportation of 14,080 unlawful aliens into or within the United States, as stated in the PSR. The Court agreed, but still determined that the number of aliens involved in the offense was 10,624, based on the facts and circumstances of the evidence. Since that number is in excess of 100, the Court increased Valdez's offense level by nine levels.

In reviewing Valdez's conduct, the Court notes that in offenses involving a conspiracy or an endeavor undertaken by multiple people, U.S.S.G. § 1B1.3(a)(1) provides that sentencing adjustments shall be determined by considering "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." [39]

A review of the evidence before the Court at sentencing more than adequately establishes that the offense conduct of Valdez's conviction involved more than 100 unlawful aliens. The evidence showed that Valdez was involved in a conspiracy to transport large numbers of illegal aliens into and within the United States. The Government apprehended 393 undocumented aliens that had been transported into the United States by members of the conspiracy, and the Court determined that thousands more were successfully transported into the country over a several-year period.

Numerous truck drivers apprehended by the Government informed authorities that they were recruited and paid by Valdez, and many attested to having taken many loads of aliens on previous occasions. For example, one driver was arrested by the Government while attempting to transport 28 aliens. He informed officers that he worked for Valdez, and had previously transported approximately 30 loads of 15 to 25 unlawful aliens—a sum of 450 to 750 aliens. The Government estimated that the driver had personally transported approximately 500 aliens, but even accepting conservative estimates the number of unlawful aliens transported by that driver alone easily surpassed 100. Other truck drivers involved in the conspiracy were carrying similar loads when they were apprehended by the Government: 15 aliens, 37 aliens, 21 aliens, 37 aliens, and so on. In sum, the Government apprehended 393 undocumented aliens that had been transported into the United States through Val-

---

**37.** U.S.S.G. § 2L1.1(b)(2) (2003).

**38.** *Id.* § 2L 1.1(b)(2)(C). The *Guidelines* in effect at the time of Valdez's sentencing hearing also provided that, "[i]f the offense involved substantially more than 100 aliens, an upward departure may be warranted." *Id.* § 2L1.1 cmt. n. 4.

**39.** *Id.* § 1B1.3(a)(1). The Fifth Circuit has held that this requires that "the conduct sought to be attributed to the defendant is both (1) reasonably foreseeable and (2) within the scope of the defendant's agreement." *Reinhart,* 357 F.3d at 526 (citing *Carreon,* 11 F.3d at 1238).

dez's involvement in the conspiracy. As this Court stated at the sentencing hearing, Valdez may not have driven the trucks himself, but he did lay the groundwork for this operation by recruiting and paying the various truck drivers, many of whom took numerous loads. The evidence establishes that far more than 100 unlawful aliens were involved, a number that was certainly foreseeable to Valdez given his role in the recruitment and payment of the drivers. Therefore, any argument that Valdez's appellate counsel could have raised against the application of § 2L1.1(b)(2) would have been without merit.

### b. Two-level adjustment under § 2L1.1(b)(5)

■ At the time of Valdez's sentencing, § 2L1.1(b)(5) provided for a two-level increase if Valdez's offense "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person."[40] The evidence established that Valdez assisted in supervising the loading of aliens into the tractor-trailers that would be used to transport them into and within the United States. The evidence further established the poor conditions that many of the aliens were subjected to. For example, United States Border Patrol agents involved in one truck interception found that the conditions in the trailer were hot and stuffy, and that no food or water was available to the transported aliens. Several of the aliens were dehydrated, but medical attention had not been provided. Had the truck proceeded from Sierra Blanca, Texas, to its intended destination of Dallas, Texas, the aliens would undoubtedly have been exposed to an even greater risk of serious bodily injury.

Even more severe conditions were observed when law enforcement officers were called to the scene of a trailer in Dallas on July 27, 2002. Inside the trailer were two deceased men and a third man in critical condition. The third man was unconscious and was taken to a hospital to be treated for heat exhaustion. Seven additional aliens were taken to the hospital to receive medical assistance. Other aliens from that trailer told law enforcement officers that they had been in the trailer for approximately ten to twelve hours, and that it was dark, hot, and very hard to breathe; this eventually led to vomiting and fainting. Without available water, the aliens in the trailer were forced to drink their own urine. Various attempts to get the driver's attention or puncture holes in the walls of the trailer were unsuccessful.

The transportation of individuals in such deplorable conditions undoubtedly created a substantial risk of death or serious bodily injury within the meaning of § 2L1.1(b)(5).[41] Given Valdez's involvement in recruiting the drivers and loading the aliens into the trailers, and pursuant to § 1B1.3(a)(1)'s instruction that the Court evaluate his conduct by considering the reasonably foreseeable acts and omissions of others in furtherance of the conspiracy, the Court determines that such risks were certainly foreseeable to Valdez and were an accepted characteristic of the means by which the conspiracy were carried out.

---

**40.** U.S.S.G. § 2L1.1(b)(5) (2003).

**41.** When Valdez was sentenced, the Commentary to the guideline provided that,

> Reckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct (*e.g.*, transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition).

*Id.* § 2L1.1 cmt. n. 6.

Therefore, the two-level increase of § 2L1.1 (b)(5) was properly applied.

### c. Four-level adjustment under § 3B1.1

■ Finally, § 3B1.1 provides for increases based on a defendant's aggravating role in the offense. Valdez received a four-level increase based on the Court's determination that he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." [42] While his trial counsel argued that Valdez was not a leader in the organization but at most a middle man, unnecessary to the functioning of the smuggling operation, the Court found otherwise.

As the Court explained on the record at his sentencing hearing, Valdez may not have been in a position of complete authority over the entire operation, but he nonetheless occupied the position of an organizer or a leader, a position in which he exercised decision making authority. The evidence demonstrated that Valdez was directly responsible for recruiting truck drivers in Ciudad Juarez, Mexico, and was involved in supervising the shuttling and loading of the aliens into various tractor-trailers. He participated in and planned the organization of the offense in ways that allowed the offense to take place by recruiting accomplices and supervising their preparation, and received a substantial share of the money received from the offense's commission.

Furthermore, the scope of the operation clearly satisfies the threshold requirement of § 3B 1.1 that the offense involve five or more participants or be otherwise extensive. The Guidelines indicate that "the aliens smuggled, transported, or harbored are not considered participants unless they actively assisted in the smuggling, transporting, or harboring of others." [43] Nonetheless, the evidence establishes the involvement of five or more participants. The PSR identified at least fourteen truck drivers who were personally recruited or directed by Valdez and subsequently apprehended while transporting unlawful aliens. The evidence available to the Court thus clearly established Valdez's position as an organizer or leader of a smuggling operation of requisite size, and thus the Court properly applied a four-level increase under § 3B1.1.

### d. Summary

As to each of the three adjustments that Valdez's appellate counsel failed to raise, a review of the record demonstrates that the adjustments were properly applied. The evidence before the Court sufficiently established a factual basis for each of the three adjustments. Considering that the Fifth Circuit would have reviewed this Court's factual determinations only for clear error, the Court determines that Valdez has not demonstrated that he had any meritorious issues to raise on appeal. He can thus not demonstrate that, but for his counsel's failure to raise a particular issue in his brief, the result of his appeal would have been different. In the absence of a valid claim, Ground One of Valdez's Motion to Vacate fails.

### 2. Ground Two

In Ground Two of his Motion to Vacate, Valdez argues that his appellate counsel rendered ineffective assistance by failing to petition the Supreme Court for a writ of certiorari in light of the Supreme Court's

---

42. *Id.* § 3B 1.1(a).

43. *Id.* § 2L1.1 cmt. n. 2.

decision in *Blakely v. Washington*.[44] Twenty-two days after Valdez's conviction was affirmed by the Fifth Circuit, the Supreme Court issued that decision, striking down the state of Washington's sentencing system as improperly allowing a defendant's maximum sentence to be increased beyond the statutory maximum by facts proven only be a preponderance of evidence to a judge.[45] Valdez argues that his counsel should have petitioned the Supreme Court for a writ of certiorari on the grounds that *Blakely* called into question the Federal Sentencing Guidelines. Specifically, Valdez contends that his counsel could have relied on *Blakely* and argued that the nine-and four-level adjustments to his sentence should have been applied only after being proven beyond a reasonable doubt to a jury. While his counsel did not file a petition, the Supreme Court subsequently decided *United States v. Booker*, in which it extended the reasoning of *Blakely* to the federal guidelines.[46]

■ The Court need not consider whether the Supreme Court would have granted Valdez's petition, or what outcome his case may have produced. It is well established that review by the Supreme Court is discretionary,[47] and that a defendant has no constitutional right to counsel in pursuing discretionary review.[48] When a defendant has no right to counsel, he cannot be unconstitutionally denied the effective assistance of counsel.[49] Therefore, a defendant is not denied his Sixth Amendment right to counsel by his attorney's failure to petition the Supreme Court for a writ of certiorari.[50] Accordingly, the Court is of the opinion that Ground Two of Valdez's Motion to Vacate is without merit.

## V. CERTIFICATE OF APPEALABILITY

■ The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") converted the "certificate of probable cause" ("CPC") required to appeal from the denial of a petition for federal habeas corpus relief, including the denial of § 2255 motions to vacate, into a Certificate of Appealability ("CoA").[51] To appeal the denial of a habeas corpus petition filed under 28 U.S.C. § 2255, the petitioner must obtain a CoA.[52] Appellate review of a habeas petition is moreover limited to the issues on which a CoA is granted.[53]

**44.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**45.** *Id.* at 303–04, 124 S.Ct. 2531.

**46.** 543 U.S. 220, 226, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

**47.** *Ross v. Moffitt*, 417 U.S. 600, 617, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

**48.** *Wainwright v. Torna*, 455 U.S. 586, 587, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982).

**49.** *Id.* at 587–88, 102 S.Ct. 1300.

**50.** *See Washpun v. United States*, 109 Fed. Appx. 733, 735 (6th Cir.2004); *Miller v. Keeney*, 882 F.2d 1428, 1432 (9th Cir.1989); *Brown v. United States*, 2006 WL 3626983, at *2 (D.Minn. Dec.12, 2006); *United States v.*

*Jackson*, 2005 WL 3445585, at *7 (N.D.Tex. Dec.15, 2005).

**51.** *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir.1997) (recognizing that the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir.1997) ("The standard for obtaining a CoA is the same as for a CPC.").

**52.** 28 U.S.C.A. § 2253(c)(2) (West 2006); *Miller–El v. Cockrell*, 537 U.S. 322, 335–36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

**53.** *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir.1997) ("CoAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone.").

A CoA to appeal the denial of a habeas corpus petition shall be issued only upon "a substantial showing of the denial of a constitutional right."[54] The showing necessary to obtain a CoA on a particular claim depends upon the manner in which the Court has disposed of a claim. If the Court rejects a prisoner's constitutional claim on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[55] If the petitioner wishes to challenge the Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, he must show that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether the Court was correct in its procedural ruling.[56] The Court is authorized to address the propriety of granting a CoA *sua sponte.*[57]

After considering the entire record and the parties' pleadings, the Court concludes that jurists of reason would not debate whether Valdez has stated a valid claim for relief or whether a procedural ruling in this case is correct. Accordingly, the Court declines to issue a Certificate of Appealability regarding either of Valdez's claims for relief.

## VI. CONCLUSION & ORDER

In sum, the Court concludes that Petitioner Ruben Patrick Valdez's Motion to Vacate should be denied and this matter dismissed with prejudice. The Court further finds that Valdez is not entitled to a Certificate of Appealability. Accordingly,

1. Petitioner Ruben Patrick Valdez's "Motion Under 28 U.S.C. § to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Docket No. 187), filed on October 6, 2005, is **DENIED,** and this matter is **DISMISSED WITH PREJUDICE.**

2. Petitioner Ruben Patrick Valdez is **DENIED** a Certificate of Appealability.

3. All pending motions in this cause, if any, are **DENIED AS MOOT.**

---

**54.** 28 U.S.C.A. § 2253(c)(2) (West 2006); *Miller–El,* 537 U.S. at 327, 123 S.Ct. 1029.

**55.** *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

**56.** *Id.*

**57.** *Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir.2000) (per curiam).